**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STEVEN S. MARSHALL,

       Petitioner,

v.

DAVID ORTIZ,

       Respondent.

Civil Action No. 19-19557 (KMW)

**OPINION**

**WILLIAMS, District Judge:**

Petitioner is a federal prisoner, and he is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Respondent filed an Answer opposing relief (ECF No. 4), and Petitioner filed a Reply, (ECF No. 6). For the reasons set forth below, the Court will deny the Petition.

### I.      BACKGROUND

This case arises from a disciplinary hearing during Petitioner's incarceration at FCI Bennettsville, in Bennettsville, South Carolina.[1] The incident report charged Petitioner with a violation of Bureau of Prisons ("BOP") Code 220,[2] and describes the incident, in relevant part, as follows:

> On February 17, 2018, at approximately 10:30a.m., I became aware of a SIS investigation completed on February 14, 2018, at 1:54 p.m. . . . . During the interview inmate Marshall said, "I started out

---

[1] It appears that the underlying events of this case occurred at FCI Bennettsville, but Petitioner did not file the instant Petition until after his transfer to FCI Fort Dix, in Fort Dix, New Jersey.

[2] Code 220 prohibits: "Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized by staff)." 28 C.F.R. § 541.3 (Table 1).

> having a conversation with inmate Eaglin about walking by my
> locker areas." Inmate Marshall said, "after I finished talking to
> Eaglin we started horse playing and we got injured in the process."
> Inmate Marshall said, "I broke my tooth and inmate Eaglin injured
> his hand and this concluded our horse playing." During the
> interview[,] Inmate Eaglin said, "I wasn't fighting I was horse
> playing with inmate Marshall." Inmate Eaglin said, I hit my head
> on the corner of the bunk and I believe inmate Marshall his tooth on
> the locker or bunk." Inmate Marshall sustained a 12cm cut noted to
> his right hand. Based on interviews this horse playing incident was
> caused due to inmate Marshall and Eaglin arguing over inmate
> Eaglin walking by inmate Marshall's personal locker space.

(ECF No. 4-1, at 19.)  Although the actual incident took place on or about December 13, 2017,

(*Id.* ¶ 4), the investigating officer did not issue the incident report until February 17, 2018,

approximately three days after Special Investigative Services ("SIS") completed their

investigation[3] on February 14, 2018. (*Id.* ¶ 11.)  Staff incorporated the conclusions of the SIS

investigative report into the incident report.  (*See* ECF No. 4-1, at 19, 33–36.)

    That same day, on February 17, 2018, staff delivered a copy of the incident report to

Petitioner and advised him of his rights. (ECF No. 4-1 at 19, ¶¶ 15–16, 23–24.)  Petitioner stated

that he had no comment regarding the incident. (*Id.* ¶ 24.)  At the end of the investigation, the

investigating officer referred the incident report to the Unit Discipline Committee ("UDC") for an

initial hearing.

    On or about February 23, 2018, the UDC held an initial hearing where Petitioner again

offered no comment regarding the incident. (*Id.* ¶ 21.)  After the hearing, the UDC referred the

incident report to a Discipline Hearing Officer ("DHO"), due to the seriousness of the offense. (*Id.*

¶ 18.)  Officials advised Petitioner of his rights before the DHO, and he acknowledged receipt of

---

[3] The SIS investigation report can be found at ECF No. 4-1, at 33–36.

those rights. (ECF No. 4-1, at 22, 24.)  Petitioner initially requested a staff representative and stated that he did not wish to call any witnesses at the hearing. (*Id.* at 24.)

Later, however, before the DHO hearing on March 16, 2018, Petitioner changed his mind and expressly waived his right to a staff representative, and also waived his right to call any witnesses. (*Id.* at 28.)  At the hearing, Petitioner "denied guilt [as] to committing the prohibited act of Wrestling or other forms of physical encounter, Code 220," but "[w]hen asked if he wanted to make any further comment, he stated 'I am guilty of Horse Playing.'" (*Id.* at 30.)

In total, the DHO considered Petitioner's statement and the SIS investigation report, which included interviews of the inmates and photographs of their injuries.  After considering all of the evidence, the DHO concluded that Petitioner committed the prohibited act of wrestling or other forms of physical encounter, in violation of Code 220. (*Id.* at 31.)  The DHO found, in relevant part:

> You appeared before the DHO[,] and you acknowledged to the DHO that you received a copy of the incident report and that you understood it.  When asked by the DHO if you admitted or denied committing the prohibited act of Wrestling, or other forms of physical encounter, Code 220, you admitted guilt.  When asked if you wanted to make any further comment, you stated "I am guilty of Horse Playing." . . . .
>
> Therefore, based on the staff account of the incident and your admission, the DHO finds some facts do exist which show you committed the prohibited act of Wrestling, or other forms of physical encounter, Code 220, and sanctioned you accordingly.

(*Id.*)  The DHO then issued the following sanctions: (1) revocation of twenty-seven days of good conduct time, and (2) three months of commissary restriction.  (*Id.*)

Petitioner appealed the DHO's decision to the BOP's Regional and Central Offices, primarily complaining that he did not receive his incident report within 24 hours. (*Id.* at 9–14.) Petitioner received a denial at each level of appeal. (*Id.*)

In November of 2019, Petitioner filed the instant Petition, arguing that the BOP violated his due process rights.  Respondent filed an Answer opposing relief (ECF No. 4), and Petitioner filed a Reply, (ECF No. 6).  In terms of relief, Petitioner seeks, among other things, the restoration of his good conduct time. (ECF No. 1, at 7.)

## II.      STANDARD OF REVIEW & JURISDICTION

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)).  "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

Where a petitioner fails to identify evidence outside the record that would support or "otherwise . . . explain how . . . an evidentiary hearing" would advance his claim, a court is within its discretion to deny an evidentiary hearing. *Campbell*, 209 F.3d at 287.  In exercising that discretion, a court must accept the truth of a petitioner's factual allegations unless the record shows that they are clearly frivolous. *Friedland*, 879 F. Supp. at 434; *c.f. United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015).

4

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time" he files his petition. *Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004) (quoting *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989)).

This Court has subject matter jurisdiction under § 2241 to consider the Petition because Petitioner challenges the loss of good conduct time on constitutional grounds, and he was incarcerated in New Jersey at the time he filed the Petition. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242–44 (3d Cir. 2005).

### III.    DISCUSSION

Petitioner appears to argue that the BOP violated his due process rights because: (1) the BOP failed to provide him with an incident report within 24 hours of the incident; (2) the DHO found him guilty without sufficient evidence; and (3) the DHO was not impartial. (ECF No. 1, at 6–8; ECF No. 6, at 3–5.) In response, Respondent contends that Petitioner received all the necessary due process protections, and that in any event, there is "some evidence" to support the DHO's findings and decision.

Under our jurisprudence, before a prisoner may lose good time credits, officials must afford him the following due process protections: (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body. *See Crosby v. Piazza*, 465 F. App'x 168, 171–72 (3d Cir. 2012) (per curiam) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–71 (1974)).

Additionally, in order to comport with due process, there must be "some evidence in the record" to support a disciplinary officer's findings and decision to revoke good time credits. *Gonzalez v. Hollingsworth*, No. 15-2993, 2016 WL 1732376, at \*2 (D.N.J. May 2, 2016) (quoting *Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013)). The "some evidence" standard is one of appellate review and is not the same as the "burden of proof in a prison disciplinary proceeding." *Id.*

Indeed, the "some evidence" standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). Instead, "the relevant inquiry asks whether 'there is any evidence in the record that could support'" the disciplinary official's conclusion. *Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985)).

**A. The Right to Written Notice**

With the principles above in mind, Petitioner first contends that the BOP violated due process by failing to provide him a copy of the incident report within 24 hours of the incident. (ECF No. 1, at 8.) Petitioner appears to be referring to 28 C.F.R. § 541.5(a), which states that an inmate "will *ordinarily* receive the incident report within 24 hours of staff becoming aware [of the inmate's] involvement in the incident." (emphasis added).

*Wolff*, however, "only requires that an inmate receive written notice of the charges at least 24 hours *before a hearing*." *Gross v. Warden, USP Canaan*, 720 F. App'x 94, 96–97 (3d Cir. 2017) (emphasis added). Further, the Third Circuit explicitly held that "*Wolff* does not require the issuance of an incident report within 24 hours of the incident." *Id.*; *see also Wallace v. Fed. Det.*

6

*Ctr.*, 528 F. App'x 160, 162–63 (3d Cir. 2013); *Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012).

As a result, the Third Circuit concluded that a technical violation of 28 C.F.R. § 541.5(a) "is not actionable" without some showing of prejudice. *Wallace*, 528 F. App'x at 162–63; *Millhouse*, 458 F. App'x at 203 ("Additionally, we note that even if the regulation had been violated, its violation is not actionable in this case. Milhouse cannot show that his right to due process was violated by a technical non-compliance with a regulation where any delay did not prejudice him.").

With those principles in mind, Petitioner received the incident report on February 17, 2018, (ECF No. 4-1, at 19, ¶¶ 15–16), and the DHO hearing took place on March 16, 2018.[4] (*Id.* at 31– 32.) Consequently, Petitioner received the incident report well over 24 hours before the hearing, and thus, the BOP afforded Petitioner with sufficient written notice under *Wolff*. *See Crosby*, 465 F. App'x at 171–72.

Ultimately, Petitioner argues that he is entitled to relief due to a technical violation of 28 C.F.R. § 541.5(a) and its requirement to "ordinarily" provide a prisoner with a copy of the incident report within 24 hours of staff becoming aware of the incident. Petitioner alleges, with no further elaboration, that if he had received the incident report within 24 hours, he "would have been able to call witnesses that would have testified that [he] was merely horse playing and there was no 'wrestling or other forms of physical encounter.'" (ECF No. 1, at 8.)

In his papers, however, Petitioner fails to identify those witnesses or describe with particularity, what their testimony would have been. (ECF Nos. 1, 6.) Further, Petitioner fails to

---

[4] The DHO report contains typographical errors stating that the hearing took place on March 16, 2017. (ECF No. 4-1, at 31–32.)

explain why those witnesses were unable to testify at his DHO hearing. (ECF Nos. 1, 6.)  Perhaps most critically, Petitioner declared that he did not wish to call any witnesses and expressly waived his right to call witnesses at the DHO hearing. (ECF No. 4-1, at 24, 28.)  Plainly, Petitioner cannot demonstrate that the delay caused him witness related prejudice if he waived his right to call witnesses and had no intention of calling any witnesses.

Similarly, Petitioner fails to describe any of the evidence he would have presented at the hearing and fails to explain why it was not available at the hearing.  As a result, Petitioner has failed to demonstrate that he suffered any prejudice from the delay in receiving his incident report.

For all those reasons, the Court finds that the BOP provided Petitioner with sufficient notice to satisfy due process.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B. Sufficiency of the Evidence

Next, Petitioner appears to argue that the "greater weight of the evidence" does not support a finding that he committed the prohibited act of wrestling or other forms of physical encounter in violation of Code 220. (ECF No. 1, at 8.)  Petitioner offers little explanation for this position, emphasizing that he was "merely horse playing" and summarily concluding that horse playing "is not a prohibited act." (*Id.* at 5.)  In his Reply, he also emphasizes a few typographical errors regarding the DHO report, arguing that it shows a "rushed, slap-dash process." (ECF No. 6, at 3–4.)

To the extent that Petitioner asks this Court to reweigh the evidence, that is not the duty of this Court.  Unlike a DHO hearing, this Court need not decide whether the "greater weight of the evidence" supports any particular conclusion.  Instead, when reviewing a DHO's decision resulting in the loss of good time credits, federal courts will uphold that decision as long as there was "some evidence" to support the DHO's findings and decision. *Hill*, 472 U.S. at 455–56.  As mentioned

above, the "some evidence" standard is one of appellate review and it is not the same as the "burden of proof in a prison disciplinary proceeding." *Gonzalez*, 2016 WL 1732376, at *2 (quoting *Denny*, 708 F.3d at 144).

The standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang*, 529 F. App'x at 123 (citing *Thompson*, 889 F.2d at 502). Instead, district courts need only ask whether "there is any evidence in the record that could support" the disciplinary official's conclusion. *Id.* (quoting *Hill*, 472 U.S. at 455–56) (internal quotation marks omitted).

With that minimal standard in mind, there is plainly "some evidence" to support the DHO's findings and decision in this case. Petitioner and inmate Eaglin's substantial injuries alone, are sufficient to meet the "some evidence" standard. For example, the broken tooth and twelve-centimeter cut could have led the DHO to conclude that Petitioner and the other inmate engaged in some kind of "physical encounter," regardless of whether the inmates characterized it as horse playing. (ECF No. 4-1, at 31.)

In other words, the DHO was free to assess the inmates' credibility and assign little or no weight to their explanation for their injuries. Indeed, it is conceivable that two inmates would diminish the nature and extent of their physical interaction to avoid the risk of punishment. Further, the SIS investigation report offered a motive for the altercation, stating that Petitioner advised that he had "a conversation with inmate Eaglin about walking by [Petitioner's] locker area," *i.e.*, a dispute over personal space. (*Id.*)

Additionally, the DHO was free to conclude that horse playing, in general, constitutes a "physical encounter" in violation of Code 220. *See* 28 C.F.R. § 541.3 (Table 1). Petitioner appears to believe that horse-playing does not constitute a physical encounter, but it is the regulation, 28

C.F.R. § 541.3 (Table 1), and the BOP's interpretation of that regulation, that controls. *Materon v. Ebbert*, 446 F. App'x 405, 407 (3d Cir. 2011) (citing *Chong v. Dist. Dir., INS*, 264 F.3d 378, 389 (3d Cir. 2001)). More specifically, "[a]n agency's interpretation of its own regulation is 'controlling . . . unless it is plainly erroneous or inconsistent with the regulation.'" *Chong*, 264 F.3d at 389 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)); *Angel v. Dep't of Just.*, No. 15-7514, 2016 WL 3545097, at *4 (D.N.J. June 28, 2016).

The provision at issue, Code 220, prohibits the "[d]emonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, *or other forms of physical encounter*, or military exercises or drill (except for drill authorized by staff)." 28 C.F.R. § 541.3 (Table 1) (emphasis added). The Court finds that it was not plainly erroneous or inconsistent with the regulation for the DHO to conclude that "horse playing" constitutes wrestling or some form of physical encounter. (ECF No. 4-1, at 31.) Consequently, when Petitioner testified, "I am guilty of Horse Playing," that admission would have also amounted to "some evidence" to support the DHO's conclusion that Petitioner violated Code 220. Accordingly, for all those reasons, Petitioner is not entitled to habeas relief on this ground.

### C. The Right to an Impartial Decision-Maker

Next, although the Court is not required to do so, the Court will briefly address an argument raised for the first time in Petitioner's Reply.[5] In his Reply, Petitioner appears to argue that the

---

[5] Under our jurisprudence, a party "may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *Judge v. United States*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015); *see also McNeil v. Johnson*, No. 18-10003, 2019 WL 3805118, at *1 (D.N.J. Aug. 12, 2019); *Soto v. United States*, No. 04-2108, 2005 WL 3078177, at *6 (D.N.J. Nov. 16, 2005), *aff'd*, 313 F. App'x 496 (3d Cir. 2008).

This prohibition applies in habeas matters because "[b]asic fairness requires that an opposing party have a fair notice of his adversary's claims, as well as an opportunity to address those claims." *McNeil*, 2019 WL 3805118, at *1 (quoting *Judge*, 119 F. Supp. 3d at 284). "The reason for such

DHO was not impartial, and that the DHO's decision was a pretext to "justify the transfer of Petitioner" and to get "rid of him." (ECF No. 6, at 3–5.)

In the prison disciplinary hearing context, the Third Circuit has held that the "requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge." *Speight v. Minor*, 245 F. App'x 213, 217 (3d Cir. 2007) (internal quotation marks omitted). In the absence of a showing that the DHO was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," courts have generally rejected due process challenges based on claims of DHO bias. *See, e.g.*, *Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008); *Edwards v. Yates*, No. 15-5780, 2016 WL 6562048, at *9 (D.N.J. Nov. 4, 2016).

In the present case, Petitioner's vague "claim of general of bias" does not amount to "direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge," that could show that the DHO was not impartial. *Lewis v. Canaan*, 664 F. App'x 153, 156 (3d Cir. 2016) (internal quotation marks omitted); *Rodriguez v. Ebbert*, No. 15-1815, 2016 WL 3457175, at *3 (M.D. Pa. June 20, 2016) (finding that a "'generalized critique' of [DHO] impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation").

Rather, Petitioner's "evidence" in support of this claim is merely speculation regarding his transfer and his displeasure with the DHO's reasoning and decisions. (ECF No. 6, at 3–5.)

---

a rule is clear: it would be fundamentally unfair to the Government to permit Petitioner to provide the true bases for his claims after the Government has used its only opportunity to respond by answering [Petitioner's] barebones [petition]." *Gilbert v. United States*, No. 14-243, 2016 WL 4087274, at *4 (D.N.J. July 28, 2016).

Accordingly, Petitioner has failed to demonstrate that the DHO was not impartial, and Petitioner is not entitled to habeas relief on this claim.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will deny the Petition.  An appropriate Order follows.


DATED:  March 4, 2022


Hon. Karen M. Williams,
United States District Judge